## STURGIS *v.* STATE

[No. 385, September Term, 1963.]

344

*Decided June 25, 1964.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Henry F. Lankford* for appellant.

*John W. Sause, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *W. Ross Hockersmith, State's Attorney for Worcester County,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant and Paul Pettigrew were jointly indicted for the murder of Daniel Massey in Worcester County. Pettigrew pleaded guilty. The appellant pleaded not guilty, elected trial by jury, and was found guilty of murder in the first degree without capital punishment. Two statements made by the accused were put in evidence, the second constituting a confession, and the propriety of its admission constitutes the first question raised here.

On March 5, 1963, Massey, 81 years of age, was found beaten but still alive in the secluded trailer where he lived alone. His wallet was missing although it had been in his possession the night before. On March 6, the appellant was interrogated but denied all knowledge of the crime. On March 8, he was arrested at his home. He gave a statement admitting he had driven the co-defendant Pettigrew to the vicinity of the Massey trailer, but denied any knowledge of the assault and robbery at that time. When the State undertook to establish the legality of the arrest by testimony showing probable cause, counsel for the accused conceded that the arrest was legal, and that this statement was voluntary. Sturgis was placed in a cell where he remained over the weekend. On March 11, he was taken to the place where some papers belonging to Massey had been found. One of the deputies testified that Sturgis then said he would like to change his statement. He made certain verbal admissions, but a second written statement was not taken until the following day, at about 2:30 P. M. The interrogation lasted from a half hour to an hour. On the following day, Massey died. Sturgis was taken to Salisbury and given a lie detector test at his own request.

At the trial nine witnesses placed Sturgis or his automobile in the vicinity of the crime on March 5, between 5:30 and 8:00 A. M., a fact he admitted at the trial. Pettigrew, the accomplice, testified for the State that the plan to rob Massey had been conceived by the appellant, that the appellant drove him to the scene, picked him up afterwards, and they divided the loot.

The appellant contends that the confession contained in the second statement offered in evidence was involuntary because the accused had been confined in jail four days without a hearing and without the services of counsel. It is not contended that any force or coercion was employed by the police, or that any promises were made or inducements offered, except "they told me they'd carry me to the lie detector," and that they did. Sturgis testified at one point that Sheriff Tyler "started raising his voice a little bit," and "I didn't want him to get to hollering at me * * *." Sheriff Tyler emphatically denied that he raised his voice or "hollered at" the accused, whom he had

known in a friendly way for thirteen years. Nor is there anything in the so-called "totality of events" surrounding his incarceration and questioning to indicate coercion or inducement. Upon his own testimony he did not see the interrogating officers for more than an hour. He had not been questioned during his four days in jail. As a matter of fact, Sturgis knew that Pettigrew had implicated him, that the victim was still alive, and that he had been identified as being at the scene of the crime.

Few cases in this Court, or in the Federal courts, which have come to our attention, are so barren of evidence that the confession was involuntary. Cf. *Bean v. State*, 234 Md. 432, 199 A. 2d 773, and *Haynes v. Washington*, 373 U. S. 503. The appellant did not testify that he was influenced by the length of detention, or that he was mistreated in any way. He concedes that the arrest was legal. He does not state that he ever requested to see an attorney or that his request was denied. We think this fact distinguishes the case from *Escobedo v. Ill.* 378 U. S. 478, just decided. Moreover, the statements he signed contained a statement that he had been advised of his constitutional right to remain silent. We find no error in the admission of the confession in the instant case.

The appellant further contends that the conviction should be reversed because Pettigrew on December 9, 1963, signed a statement under oath to the general effect that Sturgis had not been a participant in the crime, and that he was induced to give perjured testimony through fear of the death penalty and threats by the State's Attorney. On December 13, 1963, this statement was filed in the trial court and included in the record transmitted to this Court, although the trial had been completed on October 25, 1963, and sentence imposed, after the denial of a motion for new trial, on October 31, 1963.

We think it is clear that the statement is not properly before us. A similar statement was forwarded to this Court in *Coleman v. State*, 209 Md. 379, after the case had been argued but before a decision. We held that the statement was not properly before us. Cf. *Jones v. State*, 214 Md. 525. The problem of the recanting witness is not new. See *State v. D'Onofrio*, 221 Md. 20, *Coleman v. State*, 221 Md. 30, *Ellinger v. Warden*, 221 Md.

628, and *Meadows v. Warden,* 232 Md. 635. Cf. *Brady v. State,* 222 Md. 442. Whether the appellant in the instant case can properly seek relief in a post conviction proceeding is a question we do not reach in this appeal.

*Judgment affirmed.*