**UNITED STATES of America ex rel. Oscar WALDEN, Jr., Petitioner-Appellant,**

v.

**Frank J. PATE, Warden, Illinois State Penitentiary, Joliet Branch, Respondent-Appellee.**

**No. 14866.**

United States Court of Appeals Seventh Circuit.

July 27, 1965.

Alton Sharpe, Kleiman, Cornfield & Feldman, Chicago, Ill., for petitioner-appellant.

William G. Clark, Atty. Gen., Chicago, Ill., Richard A. Michael, Edward A. Berman, Asst. Attys. Gen., of counsel, for respondent-appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

KILEY, Circuit Judge.

Walden's petition under the Habeas Corpus Act, 28 U.S.C. § 2241 et seq., dismissed without a hearing by the district court, presents the question whether the exclusionary rule recently announced by the Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) must be applied retrospectively.

The petition alleges that Walden was denied access to counsel following his arrest and before his confession to the crime of rape, which was introduced in the 1952 rape trial. A jury convicted him and he was sentenced to seventy-five years' imprisonment. We think that the decision of the Supreme Court in Linkletter v. Walker, 85 S.Ct. 1731 (June 7, 1965), holding the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), regarding evidence obtained by illegal searches and seizures, to be prospective only, requires a similar result with respect to the rule of Escobedo.

Walden alleges, among other things, the following: He was arrested by Chicago police on Friday, January 11, 1952, about 3:30 p. m., and was held in police custody until released on bond the morning of Tuesday, January 15, 1952. He was questioned on Friday afternoon and again on Saturday morning and afternoon. During his confinement and before confessing on Saturday afternoon, he made numerous requests for an opportunity to seek advice of counsel, none of which was granted. Saturday evening he began to give a written statement to

an Assistant State's Attorney, but refused to continue. Out of the presence of the police he then told his attorney that he had lied in the confession and showed him marks on his hand and legs which he said resulted from the police kicking him and bending his fingers backward. Walden's mother, father and sister were told by the police upon several inquiries that he was not at the station. He repeatedly requested permission to see them but was not permitted to do so until Monday night, January 14, when he showed them and a minister who came with them bruises and marks and bloody clothing which he said resulted from police brutality.

Following Walden's conviction and sentence in the Criminal Court of Cook County his petition under the Illinois Post Conviction Hearing Act was dismissed without a hearing, but the Illinois Supreme Court allowed his petition for writ of error and remanded for a hearing on the merits of the claim that the confession was coerced. After a full evidentiary hearing the trial court denied the petition and the Illinois Supreme Court again allowed a writ of error. This writ of error was consolidated with a similar writ from the original judgment and conviction and both the conviction and the denial of the petition were affirmed. People v. Walden, 19 Ill. 2d 602, 169 N.E.2d 241 (1960). The United States Supreme Court denied certiorari, 368 U.S. 902, 82 S.Ct. 180, 7 L.Ed.2d 97 (1961). This habeas corpus petition followed.

The record discloses that when Walden requested and was denied counsel after he had been arrested, he was being interrogated as the prime suspect in the investigation of the crime, for the purpose of securing a confession. He was twenty years old at the time, a student of music and religion, was receiving treatment for arthritis, and had never before been arrested or charged with a crime. He was not informed of his right to counsel or to remain silent at any time before the confession was made.

Escobedo, like Mapp, came before the Supreme Court on direct review from a State Supreme Court rather than by way of collateral attack as did Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), involving appointment of counsel for indigent defendants, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961), dealing with coerced confessions, and Eskridge v. Washington, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed. 2d 1269 (1958), dealing with the duty of a State to furnish trial transcripts to indigents on appeal. The latter cases, unlike Mapp, have all been given retrospective application.

The Supreme Court has determined the question of prospective or retrospective operation of a new constitutional rule upon the basis of the purpose of the rule. Where the rule in question goes to the fairness of the trial, "the very integrity of the fact-finding process," as the Supreme Court said in Linkletter, retrospective application is called for, since doubt is cast on the question of the defendant's guilt. In both Escobedo and Mapp, however, the reliability of the evidence was not questioned; the attack was on admissibility of the evidence because it was obtained in violation of a fundamental constitutional right. As Mr. Justice White pointed out in dissent in Escobedo, "Escobedo's statements were not compelled and the Court does not hold that they were." 378 U.S. at 498, 84 S.Ct. at 1769.

Nothing expressed in either the Mapp or Escobedo opinion required retrospective application of the rule announced. The purpose of the Mapp and Escobedo rules is the deterrence of abuses by law enforcement officers. Experience had shown that the only effective means of enforcing compliance with the Fourth Amendment's prohibition against illegal searches and seizures was to render all evidence thus obtained inadmissible, and in Mapp the Supreme Court took that step. Escobedo was likewise the culmination of long experience with cases in-

volving defendants who had been held and gave confessions without assistance of counsel. The administration of justice suffered from the difficulties for the trier of fact and for courts of review of determining from the conflicting testimony of the interested parties whether a confession was or was not voluntary; and a condition existed where ignorance of constitutional rights and absence of counsel operated to the prejudice of persons in custody. In order to put an end to a system so fraught with potential abuses, the Supreme Court in Escobedo decided to remove the incentive to deny an accused the right to counsel by rendering inadmissible any confession obtained while such denial was in effect. It is because of the similarity of purposes that we, as the Supreme Court did with the Mapp rule in Linkletter v. Walker, hold that the rule of Escobedo does not apply retrospectively.[1]

Petitioner argues, without merit, that he was denied due process and a fair hearing because the State trial court at his trial rendered neither an opinion, conclusions of law, nor findings of fact, and failed to charge the jury setting forth adequate and correct federal standards governing admissibility of his confession. The trial court employed the so-called "Massachusetts procedure" specifically approved by the Supreme Court in Jackson v. Denno, 378 U.S. 368, 378, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), by which the trial judge makes an independent determination of the voluntariness of the confession and rules it admissible only if he finds it voluntary. The jury is then instructed that it should disregard the confession unless it finds that it was voluntary.

We have examined the instructions and find that the jury was properly instructed that it should disregard the confession if there was a reasonable doubt that it was voluntary. Jackson v. Denno, supra; Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). The question of voluntariness was thoroughly submitted. From the record of the hearing held on the admissibility of the confession in this case and the statements of the trial judge in admitting the confession, it is clear that the proper federal standards were applied. The absence of formal findings of fact and conclusions of law of the trial judge does not itself require a federal evidentiary hearing under these circumstances. The district court may accept the factual determinations of the trial judge, Townsend v. Sain, 372 U.S. 293, at 314–315, 83 S.Ct. 745, 9 L.Ed.2d 770. There is no room either for invocation of Townsend v. Sain's mandatory hearing rule in this case, on the ground that it cannot be determined from the jury's general verdict whether the jury found the confession involuntary and disregarded it, or voluntary and relied on it. Jackson v. Denno, 378 U.S. at 378, n. 8, 84 S.Ct. 1774. The question of voluntariness, submitted to the jury, was again thoroughly gone into at a full evidentiary hearing under the Illinois Post Conviction Hearing Act, and the trial court resolved the questions of credibility against petitioner. The record of this hearing shows that the proper federal standards were applied, as they were also applied by the Illinois Supreme Court in affirming both judgments.

Because of the foregoing considerations we must also hold without merit petitioner's contention that because of the "totality of circumstances" from the time of his arrest until the making of the alleged coerced confession, the district court was required, under

---

1. Prior to announcement of the Linkletter decision, the Court of Appeals for the Third Circuit, without discussion of the question of retrospectivity, applied the rule of Escobedo to a conviction which became final prior to that decision. United States ex rel. Russo v. New Jersey, 351 F.2d 429 (3rd Cir. May 20, 1965). Also in pre-Linkletter decisions the Supreme Court of California, in In re Lopez, 42 Cal.Rptr. 188, 398 P.2d 380 (1965), and the Supreme Court of New Jersey, in State v. Johnson, 43 N.J. 572, 206 A.2d 737 (1965), held the rule not retrospective.

the rules of Townsend v. Sain,[2] to hold an evidentiary hearing. Whether or not a hearing should have been held in this case was within the discretion of the district judge, and we cannot say that that discretion was abused.

The judgment is affirmed.

2. "We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." 372 U.S. at 313, 83 S.Ct. at 757.

Petitioner points to no specific criterion under which a hearing was mandatory, and we find none.