## Commonwealth *v.* Negri, Appellant.

Argued January 7, 1964; reargued January 6, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused November 4, 1965.

*Leonard L. Ettinger,* with him *Manfred Landau,* for appellant.

*Joseph M. Smith,* Assistant District Attorney, with him *Gordon Gelfond,* Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, September 29, 1965:
On January 30, 1963, Charles Negri was convicted by a jury of murder in the first degree, and a sentence of life imprisonment was imposed on June 17, 1963. Thereafter, an appeal was filed with this Court, and on March 17, 1964, we affirmed the judgment of sentence, 414 Pa. 21, 198 A. 2d 595 (1964). Subsequently, on June 22, 1964, decisions were filed by the Supreme Court of the United States in the cases of *Escobedo v. Illinois,* 378 U.S. 478 (1964), and *Jackson v. Denno,* 378 U.S. 368 (1964). In order to consider and evaluate the application of these rulings on the present case, we ordered reargument.

During the trial, a confession, given by Negri to the police following his arrest and while he was without counsel, was admitted in evidence. It was established through the testimony of the police officers who participated in the interrogation that Negri was not warned of his right to remain silent, nor was he advised

that he could then have the assistance of counsel. It was further established that, during this period, Negri did not request the assistance of counsel.

When the decision in *Escobedo* was announced and studied, we construed its ruling to be limited to the particular facts of the case, and specifically so stated in *Commonwealth ex rel. Linde v. Maroney*, 416 Pa. 331, 206 A. 2d 288 (1965), and *Commonwealth v. Patrick*, 416 Pa. 437, 206 A. 2d 295 (1965), among others. As we interpreted the *Escobedo* opinion, it held that where a person in police custody is not warned of his constitutional right to remain silent during an accusatorial interrogation, it is necessary that he then be given the assistance of counsel to protect that right, *if such assistance is requested.* To us, the specific ruling of the case was clear, although, admittedly, dicta in the opinion did portend more revolutionary ramifications.

Our interpretation of the meaning of *Escobedo* was shared by other jurisdictions, both state and federal. See, *Sturgis v. Maryland*, 235 Md. 343, 201 A. 2d 681 (1964); *Illinois v. Hartgraves*, 31 Ill. 2d 375, 202 N.E. 2d 33 (1964), cert. denied, 380 U.S. 961, 85 S. Ct. 1104 (1965); *People v. Donovan*, 13 N.Y. 2d 148, 243 N.Y.S. 2d 841, 193 N.E. 2d 628 (1963); *State v. Smith*, 43 N.J. 67, 202 A. 2d 699 (1964), cert. denied, 379 U.S. 1005, 85 S. Ct. 731 (1965); *Wansley v. (Commonwealth) Virginia*, 205 Va. 412, 137 S.E. 2d 865 (1964), cert. denied, 380 U.S. 922, 85 S. Ct. 920 (1965); *McQueen v. Maxwell*, 177 Ohio St. 30, 201 N.E. 2d 701 (1964); *Browne v. State*, 24 Wis. 2d 491, 131 N.W. 2d 169 (1964), cert. denied, 379 U.S. 1004, 85 S. Ct. 730 (1965); *United States ex rel. Townsend v. Ogilvie*, 334 F. 2d 837 (7th Cir. 1964), cert. denied, 379 U.S. 984, 85 S. Ct. 683 (1965); and, *Mitchell v. Stephens*, 232 F. Supp. 497 (D.C. E.D. Ark. 1964).

However, other state and federal jurisdictions interpreted *Escobedo* differently, and reached another re-

sult. These concluded that the assistance of counsel must be afforded the accused (if not intelligently and understandingly waived) at the interrogation level; otherwise, any incriminating statements obtained are constitutionally invalid and inadmissible at trial, even in the absence of a request for such assistance. See, *People v. Dorado*, 42 Cal. Rptr. 169, 398 P. 2d 361 (1965), cert. denied, 381 U.S. 946, 85 S. Ct. 1793, 33 L.W. 3382 (1965); *Oregon v. Neely*, 395 P. 2d 557 (Ore. 1964); *Commonwealth v. McCarthy*, 200 N.E. 2d 264 (Mass. 1964); *Campbell v. Tennessee*, 384 S.W. 2d 4 (Tenn. 1964); and, *United States v. Guerra*, 334 F. 2d 138 (2d Cir. 1964), cert. denied, 379 U.S. 936, 85 S. Ct. 337 (1964).

Thus, the law on the point in question is in a state of serious confusion with no apparent hope of enlightment from the Supreme Court of the United States, in view of its action in refusing certiorari in cases reaching conflicting results. Compare *People v. Dorado*, supra, with *Illinois v. Hartgraves*, supra, and *United States v. Guerra*, supra, with *United States ex rel. Townsend v. Ogilvie*, supra.

Coupled with this inaction, the recent (May 20, 1965) decision of the distinguished United States Court of Appeals for the Third Circuit in the companion cases of *United States ex rel. Russo v. New Jersey*, and *United States ex rel. Bisignano v. New Jersey*, 351 F. 2d 429 (3d Cir. 1965), takes on added importance. That court, speaking through Chief Judge Biggs, elected to join the jurisdictions holding that no request by the accused is necessary to impose upon the interrogating police the duty to furnish the assistance of counsel in this situation in the absence of a warning to remain silent or an intelligent and understanding waiver. Obviously, this decision creates a serious problem for this Court, and jeopardizes the finality of our judgments in relevant cases.

While recognizing that in cases involving federal questions the Supreme Court of the United States is the ultimate arbiter, in view of the widespread confusion in this area of the law and the failure of the Supreme Court to clarify it, the decision of the Third Circuit Court of Appeals is on this matter, for all practical purposes, the ultimate forum in Pennsylvania. If the Pennsylvania courts refuse to abide by its conclusions, then the individual to whom we deny relief need only to "walk across the street" to gain a different result. Such an unfortunate situation would cause disrespect for the law. It would also result in adding to the already burdensome problems of the Commonwealth's trial courts, which look to us for guidance. Finality of judgments would become illusory, disposition of litigation prolonged for years, the business of the courts unnecessarily clogged, and justice intolerably delayed and frequently denied.

Consequently, in order to alleviate and correct a regrettable situation, the clear indication for this Court is to accept and follow the decision of the Third Circuit on this matter until some further word is spoken by the Supreme Court of the United States.

Notwithstanding this result, however, the reasoning in two recent decisions of the Supreme Court of the United States,[1] denying retrospective effect to the decision in *Mapp v. Ohio,* 367 U.S. 643 (1961), raises serious questions as to the retrospectivity of the ruling in *Escobedo v. Illinois.*[2]

---

[1] *Linkletter v. Walker,* 381 U.S. 618, 85 S. Ct. 1731, 33 L.W. 4576 (1965), and *Angelet v. Fay,* 381 U.S. 654, 85 S. Ct. 1750, 33 L.W. 4587 (1965), both delivered June 7, 1965.

[2] The Supreme Court of California, in a companion case with *People v. Dorado,* 42 Cal. Rptr. 169, 398 P. 2d 361 (1965), denied retrospective application of the *Escobedo* ruling: *In Re Lopez,* 42 Cal. Rptr. 188, 398 P. 2d 380 (1965). So too, the United States Court of Appeals for the Seventh Circuit, relying upon *Linkletter v. Walker,* supra, note 1, denied retrospective application to the

The wide-sweeping effect of the decision in *Link-letter,* supra, note 1, seems to abandon once and for all the Blackstonian concept that judges do not make, but merely discover, the law, and that overruled decisions were never the law, but merely erroneously declared concepts. And, having hurdled the philosophical obstacle, the Court continues, 381 U.S. at 629, 85 S. Ct. at 1737, 33 L.W. at 4579: ". . . [W]e believe that the Constitution neither prohibits nor requires retrospective effect. As Justice CARDOZO said, 'We think the Federal Constitution has no voice upon the subject.'" (Citing *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364 (1932), as authority in a footnote). The approach then is to "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." 381 U.S. at 629, 85 S. Ct. at 1738, 33 L.W. at 4579.

The guarantee against a denial of the right to the assistance of counsel, embodied in the Sixth Amendment, is obligatory upon the states only insofar as the denial violates the protection of the Due Process Clause of the Fourteenth Amendment. Due process of law has always been a term difficult to define with exactitude, and is said to be that process which assures to the accused a fair trial within the "concept of ordered liberty". See, *Palko v. Connecticut,* 302 U.S. 319 (1937). The right to counsel at pretrial stages inherent in this concept was enunciated in *Crooker v. California,* 357 U.S. 433 (1958), and *Cicenia v. LaGay,* 357 U.S. 504 (1958), which denied that there was an *absolute* right to counsel prior to trial. The test applied was whether the accused suffered any prejudice from the failure to supply counsel at these stages, a

ruling in *Escobedo*: *United States ex rel. Walden v. Pate,* 350 F. 2d 240, 34 L.W. 2065 (7th Cir. 1965) (decided on July 27, 1965).

test to be applied on an ad hoc basis. Then, in *Escobedo v. Illinois,* the Court found this ad hoc basis to be an unreliable method for the determination of Constitutional rights, and set out, by means of absolute standards, to give complete assurance that an accused would not be overborne. The decision in *Escobedo,* while not spelling out the Fifth Amendment,[3] necessarily wraps the guarantees of the right to the assistance of counsel and the right to be free from compulsory self-incrimination into one package.[4]

What, then, is the purpose of the ruling in *Escobedo? Crooker v. California,* and *Cicenia v. LaGay,* supra, protect the accused from any prejudice arising out of the failure to afford counsel at an accusatory interrogation. *Jackson v. Denno,* supra, protects the accused from any use of a coerced confession. And the Fifth Amendment does not proscribe, even to federal courts, the use of voluntarily made self-incriminating statements, but only condemns *compulsory* self-incrimination. Therefore, the only function left to the ruling in *Escobedo* is to prevent the *possibility of prejudice* which an accused might not be able to prove at trial. This conclusion is somewhat akin to that of the California court in *Lopez,* supra, note 2, that the purpose was to prevent police practices which invite coerced confessions. The compelling ultimate conclusion, in either case, is that the Court was concerned with overbearing police tactics and possible abuses of individual rights.[5]

---

[3] The Fifth Amendment protection against compulsory self-incrimination is also obligatory upon the states: *Malloy v. Hogan,* 378 U.S. 1 (1964).

[4] See, Kurland, The Supreme Court, 1963 Term, 78 Harv. L. Rev. 143, 217-223 (1964).

[5] As the court stated, 378 U.S. at 488-490: "We have learned the lesson of history, ancient and modern, that a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses

The issue in this case is markedly parallel with that decided in *Linkletter v. Walker,* supra, note 1, holding that *Mapp v. Ohio,* supra, was not to be applied retrospectively. The Court there said, 381 U.S. at 637, 85 S. Ct. at 1742, 33 L.W. at 4582, ". . . [T]he ruptured privacy of the victim's homes and effects cannot be restored. Reparation comes too late." In the same manner, it is too late to silence the tongues of those convicted persons who chose to unburden themselves of the secret of their guilt. The fact that the accused may not have known that he had a right to remain silent or that he had a right to the assistance of counsel does not in any way negate the fact that the statement was made voluntarily[6] or that the probabili-

---

than a system which depends on extrinsic evidence independently secured through skillful investigation. As Dean Wigmore so wisely said: '[*A*]*ny system of administration which permits the prosecution to trust habitually to compulsory self-disclosure as a source of proof must itself suffer morally thereby.* The inclination develops to rely mainly upon such evidence, and to be satisfied with an incomplete investigation of the other sources. The exercise of the power to extract answers begets a forgetfulness of the just limitations of that power. The simple and peaceful process of questioning breeds a readiness to resort to bullying and to physical force and torture. If there is a right to an answer, there soon seems to be a right to the expected answer,—that is, to a confession of guilt. Thus the legitimate use grows into the unjust abuse; ultimately, the inocent are jeopardized by the encroachments of a bad system. Such seems to have been the course of experience in those legal systems where the privilege was not recognized.' 8 Wigmore, Evidence (3d ed. 1940), 309. (Emphasis in original.) This Court also has recognized that 'history amply shows that confessions have often been extorted to save law eforcement officials the trouble and effort of obtaining valid and independent evidence. . . .' [Citing a case.]" (Footnotes omitted.)

[6] We assume for these purposes that the statement was voluntarily made. If it was not, the convicted person's remedy lies in an attack through *Jackson v. Denno,* supra (already declared to be retrospective in *Commonwealth ex rel. Butler v. Rundle,* 416 Pa. 321, 206 A. 2d 283 (1965), and *Commonwealth ex rel. Linde v. Maroney,* supra), not through *Escobedo.*

ty of truthfulness is very high.[7] And, while the Fifth Amendment right is against compulsory self-incrimination, we do not think that an accused's ignorance rises to such compulsion.

We do not think that the purpose of *Escobedo* was to ferret out unreliable or coerced confessions, any more than the purpose of *Mapp* was to deny admissibility to irrelevant or unprobative physical evidence. The identical purpose of each was to provide adequate assurance of police adherence to the constitutional principles inherent in due process, by denying fruit to the poisoned seed. See, *Commonwealth ex rel. Wilson v. Rundle,* 412 Pa. 109, 194 A. 2d 143 (1963).

Much as the Court was concerned with the "administration of justice and the integrity of the judicial process" in *Linkletter v. Walker,* 381 U.S. at 637, 85 S. Ct. at 1742, 33 L.W. at 4582, we are equally concerned, if not more so, over the resultant chaos which would arise out of a retrospective application of *Escobedo.* Hearings would have to be held to determine whether the required admonitions had been given (perhaps by interrogators long since deceased), and whether the constitutional rights had been intelligently and understandingly waived. And if it could be found that the confession should not have been admitted, then many guilty persons would go free, because the police had felt that it was unnecessary to preserve the testimony of the other witnesses and/or the actual physical evidence which it possessed. We cannot believe that such chaos was the intent of the Supreme Court of the United

---

[7] As observed by the California court in *Lopez,* supra, note 2, 398 P. 2d at 387 (footnote 12): "The [Supreme C]ourt [of the United States in *Escobedo v. Illinois*] also indicates that the presence of counsel at interrogation will make meaningful the accused's right to remain silent. This reason does not relate to the erroneous conviction of the innocent since rarely do guiltless persons voluntarily confess."

States when it deemed fit to announce a standard to protect against any possible overbearing upon the part of investigating police officers.

The actual retrospective applications of *Griffin v. Illinois,* 351 U.S. 12 (1956) (requiring states to furnish transcripts of the trial to indigents on appeal), *Gideon v. Wainwright,* 372 U.S. 335 (1963) (requiring the appointment of counsel in all state felony trials), and *Jackson v. Denno,* supra (requiring a preliminary determination of the voluntariness of a confession before the jury can hear it), are all inapplicable to the present situation, just as they were so declared in *Mapp*—illegal search and seizure situation. Each of those cases dealt with a fundamental right, the denial of which was likely to allow the conviction of an innocent man. Such is not the case in the *Escobedo* situation, where, by hypothesis, the evidence denied admissibility is an admittedly voluntary and truthful confession, which is rendered inadmissible not because the manner of securing it was likely to produce an unreliable confession, but because it was likely not to have been given at all if the accused had been assured that he could remain silent. We are not stating that this right is any less fundamental than the right to counsel at trial, etc., but just that it is of such character that its denial was not likely to bring about an unfair trial, i.e., one in which there was a substantial chance that an innocent person might have been convicted.

The further question is asked in *Linkletter*, whether a retrospective application will further or retard the purpose of the rule. In this situation, we think it would do neither, but, as above pointed out, would seriously retard the business of the courts. While the discharging of a multitude of prisoners which would result from a retrospective application of the ruling might have some shock value to inform interrogating police officers that the courts will not countenance further

lapses, the interests of society in being secure from such an outflux heavily outweigh any additional emphasis of the seriousness of the ruling which might be obtained.[8] The rule being aimed primarily at regulating police conduct and at eliminating situations fraught only with the possibility of unprovable prejudice, we think that the proper administration of the court's business and the security and peace of society demand that the ruling in *Escobedo* operate prospectively only.

In so stating, we recognize two incongruous features. First, the ruling in *Escobedo* necessarily operated with some degree of retrospectivity when it was applied to Danny Escobedo's proceedings. This same problem arose in the *Mapp*—situation. However, assuming that there is no imperative requirement that all constitutional decisions be applied retrospectively and that there are good reasons for not doing so, the problem must be met as to where the line will be drawn.[9] While recognizing that sometimes the drawing of a line may appear to be arbitrary, we think that the line drawn in *Commonwealth ex rel. Wilson v. Rundle,* and *Linkletter v. Walker,* supra, is both workable and reasonable, i.e., that the ruling in *Escobedo* should apply only to those cases not final[10] at the time it was announced. Second, the decision of the Third Circuit in *United States ex rel. Russo v. New Jersey* and *United States ex rel. Bisignano v. New Jersey,* su-

---

[8] See, Notes, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L. J. 907, 942-943 (1962).

[9] See, Bender, The Retroactive Effect of an Overruling Constitutional Decision: *Mapp v. Ohio,* 110 U. Pa. L. Rev. 650, 673 (1962). Cf. *Commonwealth ex rel. Wilson v. Rundle,* supra, 412 Pa. at 117-118, 122, 194 A. 2d at 147, 149.

[10] As the Court said in *Linkletter,* 381 U.S. at 622, 85 S. Ct. at 1734, 33 L.W. at 4577 (footnote 5), "By final we mean where the judgment of conviction was rendered, the availablity of appeal exhausted, and the time for petition for certiorari had elapsed before our decision. . . ."

pra, of necessity applied the ruling of *Escobedo* retrospectively, since the cases there involved federal habeas corpus petitions challenging final state convictions. However, no explicit mention was made of the problem of retrospectivity, and we assume, therefore, that the question did not arise in that court. While the intersystematic problems which were presented by that decision prompted us to change our position regarding the necessity of a "request" for the assistance of counsel, we cannot defer to a position which was undiscussed and only inferentially applied by the Third Circuit.

Therefore, it is our considered opinion that, while the request for the assistance of counsel by a suspect during an accusatory investigation is not a conclusive factor in determining the admissibility of a confession under the ruling of *Escobedo,* such ruling should not be applied retrospectively to convictions finally sustained prior to the ruling of *Escobedo v. Illinois,* supra, on June 22, 1964. As applied to the present case, the conviction of Charles Negri was finally affirmed by this Court on March 17, 1964. No petition for certiorari was filed with the Supreme Court of the United States. While we granted reargument in order to determine the effect of *Escobedo* upon Negri's conviction after the operative date, that factor is irrelevant in view of the conclusion herein reached that the decision has no effect upon the conviction. Consequently, the granting of reargument for such a purpose had no effect upon the finality of the conviction.

However, since the question of coercion in securing the confession is raised in this case, it is necessary to remand the record to the court of original jurisdiction for the purpose of conducting an independent hearing, as required under *Jackson v. Denno,* supra, to determine whether the confession was voluntarily and freely given. After said hearing, the court will file a report

containing its findings and conclusions. See, *Commonwealth ex rel. Gaito v. Maroney*, 416 Pa. 199, 204 A. 2d 758 (1964), and *Commonwealth v. Coyle*, 415 Pa. 379, 203 A. 2d 782 (1964).

Record remanded with directions. Final decision reserved.

Mr. Justice COHEN dissents.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

The decision of the Supreme Court of the United States in *Escobedo v. Illinois*, 378 U.S. 478, leaves undetermined the question of its retroactivity in that Constitutional field. Moreover, the Court's Opinion in the recent case of *Linkletter v. Walker*, 381 U.S. 618, has served to increase the confusion. The last case gave no clear guideposts to State or lower Federal Courts to determine the question of retroactivity or prospectivity, but merely held that each case must be decided on an ad hoc basis, weighing the merits and demerits in each case, and particularly the effect of the decision on the question of Justice to the accused and to Society alike.

In the absence of an express holding or decision thereon by the Supreme Court, to hold *Escobedo* to be retroactive would have the practical result* of releasing a multitude of hardened criminals who had been justly convicted of felonies under the then existing law.

In these days when the appalling and constantly increasing crime wave is sweeping our Country, to apply *Escobedo* retroactively would so greatly jeopardize the protection and safety of Society, that it is difficult to believe that was the intent of the Supreme Court.

---

*Because of the lapse of time, or the loss of records, or the unavailability of witnesses for the Commonwealth, or the likely dimness of their recollection.

While I disagree with many statements in the majority Opinion in this case, I will not impute to the Supreme Court of the United States a ruling which if retroactively applied will undoubtedly have such widespread and disastrous effects upon Society unless and until the Supreme Court expressly states that its decision was intended to be retroactive. The interests and protection of Society should always be of paramount or at least equal importance to Congress, Legislatures and Courts.

For these reasons I agree with the conclusion of the majority (1) that *Escobedo* is not retroactive and (2) that under *Jackson v. Denno,* 378 U.S. 368, a remand of this case is necessary for an independent hearing and determination by the Court of the voluntariness of petitioner's confession.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I concur in much of what is said in the majority's comprehensive opinion but find it necessary to disagree with certain very important propositions which are set forth therein.

I

The majority opinion convincingly demonstrates the practical reasons why our interpretation of *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964), in the "non-request situation" should be meshed with that of this federal circuit's highest court. In this I fully concur. In terms of mere practicality and the promotion of respect for the law, the majority's decision to follow the ruling of the United States Court of Appeals for the Third Circuit in *United States ex rel. Russo v. New Jersey,* 351 F. 2d 429 (1965), in the absence of a decision by the Supreme Court of the United States,

is sound in every respect. Such cooperation speaks well for the ability of the federal-state system to operate harmoniously in assuring protection of constitutionally bestowed individual rights.

But even beyond considerations of practicality, I believe it wise for another reason to abandon our once-held distinction between "request" and "non-request" situations under *Escobedo*. On the merits of that distinction, abandoned today, the perceptive opinion of the Court of Appeals for the Third Circuit is, in my view, logically, legally and philosophically sound. Simply put, although I find the problem not completely untroublesome (see *Commonwealth ex rel. Linde v. Maroney*, 416 Pa. 331, 338, 206 A. 2d 288, 292 (1965) (concurring opinion)), I am now convinced that the right to counsel at the accusatory stage can not be constitutionally, and should not be, conditioned upon a request.

## II

On the issue presented by *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964), I agree with the majority's disposition of that question. If, however, the confession is inadmissible for reasons other than involuntariness, i.e., under the decision in *Escobedo*, then a *Jackson* finding may not be required when the directed hearing is held.

## III

Turning, then, to the right to counsel issue presented by this case, I must respectfully disagree with the majority's determination that *Escobedo* is not entitled to retrospective[1] application.[2]

---

[1] The term "retrospective" is defined in *Linkletter v. Walker*, 381 U.S. 618, 621-22, 85 S. Ct. 1731, 1733-34 (1965).

[2] For purposes of this dissent, I assume, as does the majority, that the accusatory stage had been reached, that the purpose of the

In weighing the merits and demerits of applying the *Escobedo* rule retrospectively, the majority bases its decision on the premise that the rule was fashioned as a future deterrent to improper interrogation. Believing that the basic function of the ruling in *Escobedo* is "to provide adequate assurance of police adherence to the constitutional principles inherent in due process,"[3] and analogizing this case to *Linkletter v. Walker*, 381 U.S. 618, 85 S. Ct. 1731 (1965), a majority of this Court concludes that no useful purpose would be served by applying the *Escobedo* principle to cases other than non-final judgments.[4]

The *Escobedo* principle may indeed act as a protecting deterrent against excesses in interrogations. But that, in my view, is not the sole purpose of the rule. The rule seems to recognize—indeed seems to be partially premised upon—the possibility that in the absence of such a rule a coerced and unreliable confession may be secured and may result in the conviction of an innocent defendant. That possibility is not inherent in the *Linkletter* situation where the evidence is unquestionably credible. "There is no likelihood of unreliability or coercion present in a search and seizure case." *Linkletter v. Walker*, 381 U.S. at 638, 85 S. Ct. at 1742. In *Escobedo* the Court was clearly concerned with the reliability or coerced nature of a confession. The Court noted that "a system of criminal law enforcement which comes to depend on the 'confession'

interrogation was to elicit a confession, and that the accused was not advised of his rights. Compare *Escobedo v. Illinois*, 378 U.S. at 492, 84 S. Ct. at 1766.

[3] *Commonwealth v. Negri*, 419 Pa. 117, 126, 213 A. 2d 670, 674 (1965).

[4] As the Supreme Court itself noted, the decision to refuse retrospective application to the search and seizure exclusionary rule was a departure from the general rule of retrospective application of constitutional guarantees of fundamental rights. *Linkletter v. Walker*, 381 U.S. 618, 628, 643, 85 S. Ct. 1731, 1737, 1745 (1965).

will, in the long run, *be less reliable* . . . than a system which depends on extrinsic evidence independently secured . . . ." (Emphasis supplied.) *Escobedo v. Illinois,* 378 U.S. at 488-89; 84 S. Ct. at 1764. Quoting Wigmore, the Court pointed out that ultimately under a confession system which does not respect constitutional rights "the innocent are jeopardized . . . ." *Escobedo v. Illinois,* 378 U.S. at 489, 84 S. Ct. at 1764.

In *Linkletter* the Court felt compelled to distinguish its retrospective application of *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963) (right to counsel must be afforded at trial). While the retrospective application of *Gideon* may be distinguishable from *Linkletter,* I do not think it is distinguishable from the present question of the retrospective application of pretrial right to counsel at the critical accusatory stage. To distinguish the cases, the Supreme Court reasoned that the *Linkletter* issue did not go to the fairness of the trial and the reliability of the evidence (see discussion supra), but that the *Gideon* "principle . . . went to the fairness of the trial—the very integrity of the fact-finding process." *Linkletter v. Walker,* 381 U.S. at 639, 85 S. Ct. at 1743. The present case is not unlike the *Gideon* right to counsel principle which has been applied retrospectively. Very much like the situation in *Gideon,* the lack of counsel at interrogation during the accusatory stage "could certainly 'affect the whole trial'. . . ." *Escobedo v. Illinois,* 378 U.S. at 486, 84 S. Ct. at 1762.

Moreover, the considerations bearing upon the present question are in my view extremely analogous to those which led to the retrospective application accorded *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964). *Commonwealth ex rel. Butler v. Rundle,* 416 Pa. 321, 206 A. 2d 283 (1965); see *Linkletter v. Walker,* 381 U.S. at 639 n.20, 85 S. Ct. at 1743 n.20. In *Jack-*

*son* the Supreme Court of the United States held it unconstitutional to permit the same jury deciding guilt or innocence to pass upon the voluntariness of a confession unless there had been a prior independent determination of voluntariness. The opinion in *Jackson* itself makes it quite clear that the Court was concerned with the *possibility* that the jury may have been unfairly influenced by an unconstitutional confession. See also *Linkletter v. Walker*, 381 U.S. at 639 n.20, 85 S. Ct. at 1743 n.20. The concern for the *possibility* that at trial the defendant may have been prejudiced by an unconstitutional confession led the Supreme Court to apply the holding of *Jackson* retrospectively. See *Commonwealth ex rel. Butler v. Rundle*, 416 Pa. at 329-30, 206 A. 2d at 287. In the case now before us, a majority of this Court relies on its conclusion that the function of *"Escobedo* is to prevent the *possibility of prejudice* which an accused might not be able to prove at trial."* (Emphasis in majority opinion.) *Commonwealth v. Negri*, 419 Pa. at 124, 213 A. 2d at 673. I am unable to find a satisfactory distinction between the case now before us and *Jackson*. As in *Jackson,* the possibility of an unconstitutional confession, introduced at trial, exists.

It must be concluded that we have no way of knowing how many uncounseled defendants may have been convicted on unreliable confessions unless we accord retrospective application to *Escobedo.* If objection was interposed to the use of those confessions during the prosecution, I cannot see how June 22, 1964, the date of the *Escobedo* decision, can be correctly held to be a day which determines whether some unconstitutional convictions must be re-examined and others not. In *Escobedo* it was held that confessions falling within the rule of that case could not be used at trial without rendering the conviction fundamentally unfair. Con-

victions so obtained before June 22, 1964 are just as fundamentally unfair as those after that date.[5]

I recognize and share the majority's concern for the maintenance of the " 'administration of justice and the integrity of the judicial process.' " *Commonwealth v. Negri,* 419 Pa. at 126, 213 A. 2d at 674. I cannot agree, however, that such concern requires the majority result.

In the first place, it would be naive to believe that evenhanded application of the *Escobedo* principle would have the widely suggested effect of swinging open the prison doors to release large numbers of guilty criminals on the public. When it is realized that perhaps almost three-fourths of all convictions are based on guilty pleas,[6] one sees that retrials are possible in a far smaller number of cases than frequently asserted. Very significant also are the recent holdings of a majority of this Court in *Commonwealth ex rel. Pomales v. Myers,* 418 Pa. 369, 211 A. 2d 483 (1965), *Commonwealth ex rel. Adderley v. Myers,* 418 Pa. 366, 211 A. 2d 481 (1965), and *Commonwealth ex rel. Cue-*

---

[5] While, like the majority, I am unwilling to rely on *United States ex rel. Russo v. New Jersey,* 351 F. 2d 429 (3d Cir. 1965), for the proposition that the *Escobedo* principle must be applied retrospectively, I cannot *totally* ignore the implication of the circuit court's sub silentio application of *Escobedo* to a final conviction. Even though not raised by the state, it seems likely that the court recognized the issue. It is appropriate to point out that a petition for reargument is pending in the *Russo* case. The recent decision of the Court of Appeals for the Seventh Circuit in *United States ex rel. Walden v. Pate,* 350 F. 2d 240 (1965), is concededly explicit in holding that the *Escobedo* rule is not to be applied retrospectively. However, I am no more persuaded by the reasoning of that decision than I am by that of the majority in the instant case.

[6] See, e.g., Notes, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U. Pa. L. Rev. 865 notes 3 and 4 (1964).

*vas v. Rundle,* 418 Pa. 373, 211 A. 2d 485 (1965).[7] In those cases it was held that a defendant whose counsel had not at trial objected to the admission of the confession on lack of counsel grounds was precluded from later contesting the conviction, in habeas corpus proceedings, on the basis of *Escobedo.* The probability that such an objection was made before the decision in *Escobedo* is so small as to be practically nonexistent.

These holdings reduce the number of non-plea convictions still susceptible to attack to what I suspect is a very small group. Moreover, where *Escobedo* claims are now raised in those remaining cases not foreclosed by these holdings, there is always the very real possibility that the police did, in fact, warn the accused of his constitutional right to counsel[8] or that the accusatory stage had not yet been reached. And even if a retrial is awarded, the state may well win another conviction.[9] It seems to me, then, fears that wholesale disruption of convictions will attend the

---

[7] To the same effect, see *Commonwealth ex rel. Blackshear v. Myers,* 419 Pa. 151, 213 A. 2d 378 (1965), and *Commonwealth ex rel. Johnson v. Myers,* 419 Pa. 155, 213 A. 2d 359 (1965), filed today.

[8] See, e.g., *Commonwealth ex rel. Johnson v. Myers,* 419 Pa. 155, 213 A. 2d 359 (1965).

[9] I am not convinced by the majority's statement that "if it could be found that the confession should not have been admitted, then many guilty persons would go free, because the police had felt that it was unnecessary to preserve the testimony of the other witnesses and/or the actual physical evidence which it possessed." *Commonwealth v. Negri,* 419 Pa. at 126, 213 A. 2d at 674. The same could be said where an admittedly coerced confession had been introduced at trial, or even in the *Gideon* situation, as well as many others. Yet this fact has never been held to justify the continued detention of one unconstitutionally imprisoned. Moreover, we have recognized that "when liberty is denied without constitutional assurances of due process of law, the conviction may not be permitted to stand. We cannot sacrifice to mere expediency the wise restraints and constitutional safeguards which make men free. . . ." *Commonwealth ex rel. Butler v. Rundle,* 416 Pa. 321, 330, 206 A. 2d 283, 287-88 (1965).

*Escobedo* rule, expressed with frequency in recent times, are grossly exaggerated.

In any event, whatever the volume of protest, we must make our judgments without yielding to pressures generated by voices in conflict with the Constitution. That is our task. The strength of a constitutionally bestowed right is in its insulation from negation by majority preference or expressed public opinion. And, as has so often been noted, the rights of "the public" are no safer than the rights of the individuals who, in fact, constitute the public. The judicial processes which we so jealously guard are not mere exercises in legal gymnastics. They embody procedures which experience, logic and shared feelings of fairness have taught us should attend the proceedings in which the state seeks to prove a man guilty of criminal conduct.

All of these considerations lead me to dissent from the proposition that a person unconstitutionally convicted before the fortuitous date of June 22, 1964, must be denied a valid trial, while a man convicted after that magic date receives the constitutional rights denied to another. Accordingly, I would remand the record for a hearing to investigate the circumstances surrounding the confession. The primary purpose of this hearing would be to determine whether the defendant was denied his right to assistance of counsel at the time his confession was given.[10] If it were concluded that such a denial occurred, then a retrial should be ordered. Were it concluded that no such denial occurred, then the hearing judge should determine whether or not defendant's confession was voluntary.[11] If the confession is found to be involuntary then a retrial should be ordered.

Mr. Justice MUSMANNO joins in this opinion.

---

[10] Compare the procedure under Pa. R. Crim. P. 324.

[11] The majority directs the court below to reach a conclusion on this question only.