Commonwealth *v.* Yarnal, Appellant.

Argued September 27, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John S. Fisher,* for appellant.

*Robert C. Earley,* Assistant District Attorney, and *W. Thomas Malcolm,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 15, 1968:

Robert Yarnal entered a plea of guilty to a charge of murder generally. After hearing evidence, a two-judge court found that Yarnal's admitted killing of Blair constituted murder in the first degree. Later, Yarnal filed a petition under the Post Conviction Hear-

ing Act alleging denial of right to assistance of counsel to prepare, perfect and execute a direct appeal from his conviction, whereupon he was granted leave to take this appeal.

After Yarnal shot Blair he stole his car. He was convicted and sentenced on a charge of larceny for theft of the car. He now claims that since his conviction was for larceny and not robbery, the theft could not be used to find him guilty of murder during the perpetration of a robbery so as to bring the facts within the felony-murder rule. However, the record reveals that the determination of guilt of murder in the first degree was not based on a finding of murder during perpetration of a robbery, but on the facts which established that Yarnal's killing of Blair was wilful, deliberate and premeditated murder.

The trial court found that "Robert Virgil Yarnal wilfully and deliberately and premeditatedly, shot and killed Walter Blair; this shooting occurred under such circumstances as rendered such killing completely unnecessary." The court's opinion pointed out that Yarnal "deliberately took aim and shot the deceased as he was seated therein, under circumstances which were without any justification or excuse." Thus, the felony-murder rule was not a factor in the deliberation which resulted in the verdict of murder in the first degree, and thus we find it unnecessary to determine whether the felony-murder rule would have been applicable in view of Yarnal's prior conviction for the theft of Blair's automobile as "larceny," and not robbery.

Nor do we find it necessary to determine whether the Court improperly permitted the sheriff to testify to Yarnal's reenactment of the crime, this occurring when Yarnal had no counsel.* The testimony of other

---

* It is apparently admitted by Yarnal that he was advised by the district attorney while en route to the scene that he was not

witnesses was more than legally sufficient to support the court's finding that Yarnal's killing of Blair was wilful, deliberate and premeditated murder, necessitating no reliance on the testimony of the sheriff as to Yarnal's reenactment of the crime. Yarnal urges that these witnesses had "an axe to grind," but their credibility was a matter for the court's determination.

The evidence more than adequately establishes that Yarnal's crime came within the provisions of the Act of June 24, 1939, P. L. 872, §701, as amended, 18 P.S. §4701, which declares that "All murder which shall be perpetrated by means of poison, or lying in wait, *or by any other kind of wilful, deliberate and premeditated killing . . . shall be murder in the first degree.*"

We find in the record no prejudicial error entitling Yarnal to a rehearing.

Judgment affirmed.

Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Accepting appellant's argument that his conviction for larceny of the decedent's automobile operates as an acquittal of any higher, necessarily included offense of robbery, he still may be found guilty of first degree murder on the basis of the felony-murder doctrine. Section 701 of The Penal Code of 1939, Act of June 24, 1939, P. L. 872, as amended, 18 P.S. §4701, requires only that the killing "be committed in the *perpetration* of" any of the enumerated felonies. (Emphasis supplied.) Appellant's argument, however, rests upon the assumption that a prerequisite for the ap-

———

required to tell anything or show anything; and if he did, this could be used against him in court. Also, that he was at that time asked whether or not he had counsel to which he responded that he was going to have an attorney.

plication of the felony-murder doctrine is the ability of the Commonwealth to *convict* the prisoner of one of the statutorily named felonies.[1]  I can find no such requirement in our cases; and, given the above statutory language, I would not adopt such a requirement. The evidence produced by the Commonwealth was sufficient to demonstate that Yarnal killed Blair during the perpetration of a robbery; that Yarnal could not now be convicted for commission of this robbery is statutorily irrelevant.

However, I disagree with the majority's treatment of the sheriff's testimony relating to Yarnal's re-enactment of the crime.  It is necessary to begin with the now well established premise that " 'a defendant who has pleaded guilty to murder . . . [does not waive] the right to object to the admission of improper evidence which will bear on the degree of guilt and the punishment to be imposed.' " *Commonwealth v. Garrett*, 425 Pa. 594, 597, 229 A. 2d 922, 924 (1967).  Under our decision in *Commonwealth v. Schmidt*, 423 Pa. 432, 224 A. 2d 625 (1966),[2] as amplified by later cases, testimony as to the re-enactment was inadmissible.  We there

---

[1] Had appellant been tried and acquitted for the robbery of the car, then perhaps in that case a felony-murder conviction based upon the robbery would be improper. However, where appellant was never in fact prosecuted for the robbery, his larceny conviction should not be a bar to a felony-murder conviction. Were the rule. otherwise, to obtain a felony-murder conviction the Commonwealth would be forced to obtain a conviction for the underlying felony before the murder prosecution could be successfully concluded.

[2] My citation of *Schmidt* in no way constitutes an abandonment of the views I expressed in my dissenting opinion in that case. See 423 Pa. at 442-45, 224 A. 2d at 630-32. Thus, although I continue to adhere to the belief that this Court's rejection in *Schmidt* of the holding of *Commonwealth v. Negri*, 419 Pa. 117, 213 A. : 2d. 670 (1965) was both unnecessary and erroneous, Yarnal entered his plea in March of 1965, six months prior to *Negri* making the holding in that case inapplicable.

held that in a trial commenced after *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758 (1964) but prior to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), as was Yarnal's "an individual is not unconstitutionally deprived of the assistance of counsel during police questioning, unless he requested such assistance and was not effectively warned of his right to remain silent."[3] 423 Pa. at 440, 224 A. 2d at 629. I believe that Yarnal's statements were sufficient to constitute a request for assistance of counsel.[4] Since Yarnal requested counsel, under *Escobedo* the sheriff was required to procure such assistance before either further questioning or a re-enactment was constitutionally permissible. This is made clear by the last sentence of *Escobedo* (378 U.S. at 492, 84 S. Ct. at 1766) : "We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer." See also *Commonwealth v. Medina*, 424 Pa. 632, 227 A. 2d 842 (1967). That

---

[3] See also *Johnson v. New Jersey*, 384 U.S. 719, 733-34, 86 S. Ct. 1772, 1781 (1966). Appellant does not contend that his re-enactment was involuntary so that we are not called upon to decide what impact the absence of counsel should have upon such a contention. Compare id. at 730, 86 S. Ct. at 1779.

[4] Sheriff Jeffries, in response to a question whether Yarnal and his co-defendant, Clark, had been asked whether they had obtained counsel, stated: "Their response was they didn't have counsel but both were going to have attorneys. Mr. Yarnal said his brothers would get him an attorney; and Mr. Clark, his uncle, Wilson Clark, would get an attorney for him." The fact that a request for counsel couched in language of utmost specificity is not made and refused does not mean that the prisoner cannot meet the *Schmidt* requirement that a request for counsel be made. I believe that Yarnal's statement that he was going to obtain an attorney is a sufficient request and would thus hold the re-enactment testimony inadmissible.

Escobedo was apparently not warned of his right to remain silent and Yarnal was, is, to me, of no moment. To hold otherwise would be the equivalent of stating that when an accused chooses to exercise his right of silence by consulting with an attorney he can be deprived of that right because he has been told he can remain silent. Simply, a request for an attorney is an exercise of the right of silence—to give the requisite warning yet not permit an accused to benefit by the warning is tantamount to have given no warning at all.

Yarnal was without doubt the subject of police attempts to elicit a confession. His request for an attorney was not honored and thus in my view the re-enactment is inadmissible. I thus turn to the question of whether use at the guilty plea proceedings of Yarnal's re-enactment can be deemed harmless error. See *Commonwealth v. Padgett,* 428 Pa. 229, 237 A. 2d 209 (1968).

My difficulty with the majority's approach to the harmless error issue centers about its statement that the propriety of the sheriff's testimony need not be treated since "the testimony of other witnesses was more than legally sufficient to support the court's finding that Yarnal's killing of Blair was willful, deliberate and premeditated murder." Placed in its proper context, this statement results in nothing short of an overruling of our recent decision in *Commonwealth v. Pearson,* 427 Pa. 45, 233 A. 2d 552 (1967). We held in *Pearson* (quoting from *Fahy v. Connecticut,* 375 U.S. 85, 86, 84 S. Ct. 229, 230 (1963)) that, when dealing with errors of constitutional magnitude, "[w]e are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of." 427 Pa. at 49, 233 A. 2d at 554. There can be no doubt, in my view, that admission of the sheriff's testimony

was constitutional error. Yet the majority blithely asserts that this error need not trouble us because there was sufficient untainted evidence to support the conviction, a proposition explicitly rejected by a unanimous Court in *Pearson*.[5] Use of this re-enactment, one which violates the dictates of *Escobedo*, is not harmless and requires a reversal.[6]

I dissent.

Mr. Justice JONES joins in this dissenting opinion.

---

[5] It is, of course, not within the province of this Court to overrule *Pearson*, for that decision is based totally upon *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967). In *Chapman*, the Supreme Court of the United States held that its harmless error rule was, under the supremacy clause, a constitutional imperative for state courts.

[6] The Indiana County district attorney's brief in this case is not printed although, at oral argument, he stated that printed briefs would be filed within 20 days. Printed briefs have not been filed. To the best of my knowledge Indiana County has sufficient funds to print briefs (and, in any event, has not filed a petition with this Court to dispense with a printed brief). I, therefore, fail to understand why Rule 43, requiring printed briefs, has been ignored; nor can I pass without comment the district attorney's failure to file printed briefs after he had so promised during oral argument.