**Robert Virgil YARNAL**

v.

**Joseph BRIERLEY.**

Civ. A. No. 71–72.

United States District Court,
W. D. Pennsylvania,

March 12, 1971.

---

## OPINION

ROSENBERG, District Judge.

Robert Virgil Yarnal has presented a petition for a writ of habeas corpus in forma pauperis. The petitioner is presently confined in the State Correctional Institution at Pittsburgh, Pennsylvania, serving a life sentence imposed by the Court of Oyer and Terminer of Indiana County, Pennsylvania at No. 1 December Term, 1964. The sentence was imposed on April 2, 1965, after the petitioner entered a plea of guilty to the charge of murder, generally, and a two-judge court heard the evidence and fixed the offense at murder in the first degree.

A direct appeal from the conviction and sentence was not perfected. Subsequently thereto, the petitioner filed a post conviction hearing petition which was ordered filed on May 23, 1967 and refused on the merits without a hearing. On June 5, 1967 the Court reversed itself and entered an order granting petitioner the right to take an appeal nunc pro tunc. The principal question raised before the Supreme Court of Pennsylvania, and which petitioner raises here is whether it was error to admit testimony regarding statements made and acts performed by the petitioner at a re-enactment of the crime when during that period petitioner indicated that he did not have counsel available to him, but that he was going to secure representation. On March 15, 1968, the Supreme Court of Pennsylvania affirmed the judgment of the trial court. Commonwealth v. Yarnal, 429 Pa. 6, 239 A.2d 318 (1968). Certiorari was denied November 10, 1969. Yarnal v. Pennsylvania, 396 U.S. 911, 90 S.Ct. 224, 24 L.Ed.2d 186 (1969). Therefore, the petitioner has fully exhausted the remedies available to him in the state courts. United States ex rel. Howard v. Russell, 415 F.2d 169, C.A. 3, 1969; United States ex rel. Fletcher v. Maroney, 413 F.2d 16, C.A. 3, 1969; United States ex rel. Smith v. Brierley, 295 F.Supp. 1195 (M.D.Pa.1969).

Because of the issues raised by the petitioner, I caused the complete records of the Court of Oyer and Terminer of Indiana County to be produced for my inspection. United States ex rel. Montgomery v. Brierley, 414 F.2d 552, C.A. 3, 1969, cert. den. 399 U.S. 912, 90 S.Ct. 2206, 26 L.Ed.2d 566 (1970). The completeness of these records obviates the necessity for additional evidentiary hearings. United States ex rel. Rowles v. Myers, 407 F.2d 1332, C.A. 3, 1969, cert. den. 396 U.S. 856, 90 S.Ct. 120, 24 L.Ed. 2d 106 (1969), rehearing denied 396 U.S. 938, 90 S.Ct. 268, 24 L.Ed.2d 239 (1969); United States ex rel. Thomas v. Maroney, 406 F.2d 992, C.A. 3, 1969.

The record discloses that on August 20, 1964, the petitioner and his co-defendant Elmer Wilson Clark, and the latter's sister, Jane Clark, were arrested as a result of a "suspicious-person" complaint; that at the time of the arrest, the petitioner and Jane Clark were occupants of an automobile which was parked on the berm of U. S. Route 30 in Beaver County, Pennsylvania; that as a result of a telephone call received from Jane Clark on September 26, 1964, the police located the body of Walter Blair on September 28, 1964; that the petitioner was present at the place where the body was discovered, at which time he related the

events which culminated in Blair's death, to the Sheriff of Indiana County; that the cause of death was a gunshot wound of the head; that on September 30, 1964, both the petitioner and his co-defendant were interrogated by the Sheriff of Indiana County and re-enacted the events leading up to the death of Walter Blair; that on October 7, 1964 counsel was appointed to represent the petitioner; that on March 22, 1965, the petitioner entered a plea of guilty to the charge of murder, generally; that a hearing was held for the purpose of determining the degree of guilt on April 2, 1965, at which time the degree was set at murder in the first degree, and that a sentence of life imprisonment was then imposed. In his appeal to the State Supreme Court, and in the present petition, it is contended that it was erroneous to admit the testimony of statements made to the Indiana County Sheriff for the purpose of determining the degree of the crime.

■ The denial of certiorari by the Supreme Court is without substantive significance. United States ex rel. O'Connor v. State of New Jersey, 405 F.2d 632, C.A. 3, 1969, cert. den. Yeager v. United States, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240 (1969). While the findings of the state courts are presumed to be correct, United States ex rel. Dickerson v. Rundle, 430 F.2d 462, C.A. 3, 1970, an examination of the transcript and a review of the applicable Pennsylvania law is also necessary.

It is provided that "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree." Act of June 24, 1939, P. L. 872, § 701, as amended 18 P.S. § 4701.

Following the conclusion of the testimony, the Court rendered its opinion, in which it stated that "After a careful consideration of all of the evidence in the case, we are of the opinion that Robert Virgil Yarnal willfully and de-

liberately and premeditatedly, shot and killed Walter Blair * * *" (Tr. pg. 166). Additionally, the Court concluded that "We are further of the opinion that the evidence is sufficient to conclude that the defendant, Yarnal, intended to rob the deceased, in that he previously stated that he intended to steal a car, even if it was necessary to kill; and the taking of the automobile, which is personal property, constituted the crime of robbery; that this robbery was accomplished by the killing." (Tr. pg. 167). On either ground, the Court concluded a conviction of first degree murder was warranted. On appeal, the Supreme Court of Pennsylvania did not examine the felony-murder issue, since it concluded that the evidence was sufficient to sustain a first degree conviction for a "willful, deliberate and premeditated killing."

■ The petitioner contends that the trial court improperly admitted the testimony of Paul W. Jeffries, Sheriff of Indiana County, concerning statements made by the petitioner at the time of his arrest and at the re-enactment of the crime, at which time he was not represented by counsel. In Escobedo v. Illinois, 378 U.S. 478, 492, 84 S.Ct. 1758, 1766, 12 L.Ed.2d 977 (1964), the Court held that " * * * when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession —our adversary system begins to operate, and * * * the accused must be permitted to consult with his lawyer." Under the circumstances in the instant case where the petitioner was already in custody and considered the prime focus of the murder investigation, and where, in the company of his co-defendant and representatives of the sheriff's office he was taken to the scene where the body was recovered, and engaged in a re-enactment of the crime, there can be no doubt that the proceeding was accusatory rather than investigatory. This, coupled with the fact that the petitioner and his co-defendant indicated that they were going to secure counsel

might be enough to warrant striking the testimony of the Sheriff, and granting relief, were it not for the fact that the record discloses independent evidence sufficient to raise the degree of the crime to murder in the first degree.

Jane Clark testified that she and the petitioner had decided to go to West Virginia to get married (Tr. pg. 48); that she was told that the petitioner and his co-defendant would secure an automobile for the trip (Tr. pg. 49); that they stated that they would kill if necessary to obtain a car (Tr. pg. 49); that they told her that they had killed a man to secure the car (Tr. pg. 53); and that the petitioner had a gun (Tr. pg. 53). The petitioner's co-defendant testified that the petitioner had related to him that he (the petitioner) would kill someone, if necessary, to secure a car (Tr. pg. 159).

The petitioner testified that he had taken his brother's gun for the purpose of shooting rats (Tr. pgs. 127–128); that even after Blair had picked them up, the petitioner did not intend to take the car because it was old (Tr. pg. 131); that when the decedent refused to take the petitioner and his co-defendant to Black Lick they alighted from his car, and that without any particular motive or reason, the petitioner shot and killed Blair (Tr. pgs. 131, 132, 138, 144 and 145). Thus, the evidence, independent of the testimony of the Sheriff, reveals a cold blooded, senseless, motiveless killing of a human being.

 Murder is the killing of a human being with malice aforethought, and it is the presence of this element which distinguishes murder from manslaughter. Commonwealth v. Gibson, 275 Pa. 338, 119 A. 403 (1923). Malice " * * consists either of an express intent to kill or inflict great bodily harm, or of a 'wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty,' indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life." Commonwealth v. Lawrence, 428 Pa. 188, 193–194, 236 A.2d 768, 771 (1968). It is an essential element of the crime of murder, and may be inferred from the totality of surrounding circumstances. Commonwealth v. Chermansky, 430 Pa. 170, 242 A.2d 237 (1968); Commonwealth v. Lawrence, *supra*.

 It is the fully formed purpose and not the time lapse which demonstrates the premeditation necessary to sustain a first degree murder conviction. Commonwealth v. Carroll, 412 Pa. 525, 194 A.2d 911 (1963); Commonwealth v. Earnest, 342 Pa. 544, 21 A.2d 38 (1941); Commonwealth v. Drum, 58 Pa. 9 (1868). "The specific intent to kill which is necessary to constitute in a non-felony murder, murder in the first degree, may be found from a defendant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom, and may be inferred from the intentional use of a deadly weapon on a vital part of the body of another human being." Commonwealth v. Carroll, *supra*, 412 Pa. at pg. 532, 194 A.2d at pg. 915. An individual is said to intend the consequences of his acts. Commonwealth v. Scott, 284 Pa. 159, 130 A. 317 (1925). Thus, because of the presence of malice, the crime involved was murder. From the presence of the elements of willfulness, deliberateness and premeditation, the degree of the offense was first degree murder. Consequently, the determination of the trial court was reasonable. For these reasons, it is not necessary to consider whether or not the elements of felony-murder were proven, or indeed if they could have been proven in view of the prior conviction for larceny of the Blair automobile. The Supreme Court of Pennsylvania concluded that first degree murder through the willful, deliberate and premeditated killing of a human being had been shown through evidence independent of the Sheriff's testimony, and that the conviction was proper. Under the circumstances presented by the record, no constitutional question is pre-

sented for a federal court's determination. Accordingly, a writ of habeas corpus will be denied. A certificate of probable cause will also be denied.