Robert E. McGREGOR, Plaintiff,

v.

Wilbur J. SCHMIDT, Secretary of the Wisconsin Department of Health and Social Services, and his agents and subordinates employed as members of the State Parole Board, et al., Defendants.

No. 72–C–344.

United States District Court,
W. D. Wisconsin.

May 24, 1973.

Robert E. McGregor, pro se.

Atty. Gen. Robert Warren by Asst. Atty. Gen. Robert D. Repasky, Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action for declaratory and injunctive relief. Plaintiff has been granted leave to proceed *in forma pauperis*. 28 U.S.C. § 1915. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343 (3) and 42 U.S.C. § 1983.

The complaint alleges that plaintiff is presently confined in the Wisconsin State Prison; that plaintiff has been deprived of due process at his appearances before the parole board; that under Wis.Stats. § 57.06(2) (1969), more rigorous eligibility standards for parole apply to inmates not committed under the sex offender act than to sex offenders, violating plaintiff's rights to equal protection of the laws; that plaintiff seeks parole placement in Oklahoma because he wants to practice law; that in Oklahoma a "nonlicensed person" can practice law; that he had resided in Oklahoma for a 15 month period shortly before his most recent imprisonment; that in August, 1972, he was informed by his social worker that he had a "good chance" of being granted parole in November, 1972, provided that he went to La Crosse, Wisconsin, but that it would be useless to try to be paroled to Oklahoma; that plaintiff informed said social worker that he wished to be paroled only to Oklahoma; and that the board refuses to consider his parole placement in Oklahoma. Plaintiff requests this court to enjoin defendants "from their continued refusal to consider paroling plaintiff" to Oklahoma and from the "continued enforcement" of Wis.Stats. § 57.13.

Defendants' motion to dismiss for failure to state a claim is presently before this court.

Defendants have submitted an affidavit showing, and I find, that plaintiff has been released on parole subsequent to the filing of the motion to dismiss. I take judicial notice that following the parole grant, plaintiff has resided in La Crosse, Wisconsin.

I must consider whether any of the allegations of the complaint present a live controversy. In Morales v. Schmidt, Case No. 72–1373 (7th Cir. Jan. 17, 1973), it was held that despite Morales' release on parole prior to the entry of an injunction by the trial court, his challenge to restrictions placed upon his communications while confined in the Wisconsin State Prison was not moot. The Court of Appeals relied upon two factors: 1) that Secretary Schmidt stated that he refrained from placing similar restrictions on plaintiff's correspondence while he was on parole solely because of the injunction ordered by this district court; and 2) that there was always the possibility that Morales' parole might be revoked and that he would return to prison. *Morales, supra*, slip opinion p. 5.

Here plaintiff claims that the parole release proceedings deprive him of due process and equal protection. I hold that it would be too speculative to decide these issues solely on the basis that plaintiff's parole may be revoked, that he may be returned to the Wisconsin State Prison, that he may again appear before the parole board, and that should he so appear, he may be deprived of due process and equal protection of the laws.

The judicial power of the United States extends only to "cases and controversies" under Article III, Section 2 of the U.S. Constitution. *See* 1 Barron & Holtzoff, Federal Practice and Procedure § 21, p. 88. Moot cases are beyond the judicial power as there is no case or controversy once the matter has been resolved. Federal courts may not render advisory opinions but must decide only present and live controversies. Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.

Ed.2d 214 (1969); Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961); California v. San Pablo & T. R. Co., 149 U. S. 308, 13 S.Ct. 876, 37 L.Ed. 747 (1893).

■ However, plaintiff also challenges the constitutionality of defendants' actions prohibiting plaintiff from being released on "out-of-state parole." Because plaintiff is presently paroled in Wisconsin, if he succeeds on the merits, injunctive relief ordering the parole board to reconsider his parole placement or to allow him to be paroled in another state might be appropriate. Therefore this claim is not moot.

Defendants advance the theory that this latter contention fails to state a claim because a grant of parole is a grant of conditional freedom and a prohibition against a parolee's departing the state is a reasonable condition.

Under Wis.Stats. § 57.13, the governor is authorized to enter into compacts with other states providing for parolees from Wisconsin institutions to be paroled to other states under certain circumstances. The receiving state must be willing to assume the duties of supervising the parolee. Wis.Stats. § 57.135 provides for similar arrangements with states which are not signatories to a compact.

■■ It is unclear from the face of the complaint whether the gravamen of plaintiff's claim is that he will not be permitted to be paroled to Oklahoma or that his request for said parole placement will not even be considered by the board. Liberally construing the complaint, *see* Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), I conclude that plaintiff is asserting two "alternative" claims here: 1) that by not allowing plaintiff out-of-state parole, defendants have violated plaintiff's constitutional rights; and 2) by refusing to consider his request to be placed in Oklahoma, defendants have violated said rights. These claims overlap. With respect to the second claim, I note that the Wisconsin statutes cited by plaintiff do not create an affirmative statutory duty upon the parole board to investigate and consider each prospective parolee's desires with respect to parole placement. Furthermore, even if such a statutory duty did exist, the parole board's refusal to comply with a state statute, without more, would not state a federal constitutional claim under § 1983. Therefore, in order to establish his second "alternative" claim, plaintiff must demonstrate: 1) that his constitutional rights were violated by the parole placement; and 2) that the placement was proximately caused by the parole board's failure to consider his request. As the first element of this proof entitles plaintiff to relief under his first "alternative" claim, for the purpose of this motion I shall not distinguish between the two claims asserted.

Turning to the merits, the question is whether a prospective parolee's constitutionally protected interests are adversely affected by defendants' designation of his geographical parole location. In the instant case, plaintiff challenges the state's determination that he may be released from a state penal institution to travel to and reside in La Crosse, Wisconsin, but that he may not travel to and reside in Oklahoma.

In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968), the Court held that residency requirements for welfare assistance penalized indigent appellees for moving from jurisdiction to jurisdiction, limiting the exercise of their right to travel; that said right to travel interstate is fundamental; and that consequently said requirements must be shown to be necessary to promote a compelling governmental interest. *Shapiro, supra* at 634, 89 S. Ct. 1322.

■ In Mabra v. Schmidt, 356 F. Supp. 620 (W.D.Wis., 1973), I stated my belief that in administering constitutional civil litigation, the federal courts are bound by the guarantee of equal protection (embodied in the Fifth Amendment) to honor the same set of rules in recognizing or declining to recognize a

presumption of validity, in allocating the burden of persuasion, and in defining the nature of that burden, whether the plaintiff-challenger is a person convicted of crime or not and whether the governmental measure challenged is a correctional measure or not. *Mabra, supra* at 625–626. I further stated that were it not for the decision of the Court of Appeals in *Morales*, I would have held that a prisoner confined in the segregation building has a fundamental right to associate with his children, and that state restrictions upon said right must be justified by a compelling state interest. *Mabra, supra* at 631.

Noting my uncertainty about the application of *Morales*, I somewhat reluctantly held in *Mabra* that whether an inmate's claim challenging a correctional measure was asserted under the Due Process or Equal Protection Clause of the Constitution, I should apply the following analysis:

> First, I must recognize that in the 7th Circuit under *Morales*, § 1983 actions brought by persons convicted of crime to challenge correctional measures are not to be administered in the same manner as § 1983 actions brought by persons not convicted of crime. In cases brought by persons convicted of crime challenging correctional measures, I must "initially . . . examine the individual interest at stake and consign it to one of two categories: fundamental or non-fundamental." *Mabra, supra* at 628. Then, if I determine that the individual interest is fundamental, I must further decide whether it is a "category (a)" fundamental interest or a "category (b)" fundamental interest. If the fundamental individual interest falls within "category (a)", I must allocate to the state the burden of showing a compelling governmental interest in the limitation or denial (if the challenge is brought under the Due Process Clause) or in the differential in treatment (if the challenge is brought under Equal Protection). On the other hand, if the fundamental individual interest falls within "category (b)" the state has the burden of showing only a rational relationship or a reasonable necessity. *Mabra, supra* at 628–629.

I conclude that the right to travel is fundamental. *Shapiro v. Thompson, supra.* The difficult question here is whether this fundamental individual interest falls within "category (a)" or "category (b)." *Morales* involved a prohibition against written communications between an inmate and his sister-in-law. There is broad dicta in *Morales* that extends to associations generally. However, the right asserted here is the right to travel. *Morales* provides no guidance in the classification of this right as a "category (a)" or "category (b)" fundamental interest. Although the Court of Appeals did mention some types of correctional restrictions which it implied might involve "category (a)" fundamental interests, triggering the application of the compelling state interest test, it did not attempt to make an exhaustive list of said restrictions nor to set out criteria to be applied to distinguish "category (a)" from "category (b)" fundamental interests. *Morales, supra,* slip opinion, pp. 6–7 ns. 6, 11.

 I hold that the right to travel is a "category (a)" fundamental interest. This does not mean that the state may not limit the geographical movement of those convicted of crime, but only that in a suit challenging the constitutionality of restrictions upon said persons' right to travel the court must require the defendants to show a compelling state interest in the restriction, and that the restriction is narrowly designed to serve that compelling governmental interest. I note that as the status of a person convicted of crime changes, for example, as an inmate in a maximum security institution becomes a parolee, a particular governmental interest in restricting his movements geographically may become less compelling; another, more; and a particular form of restriction may become too broad or too narrow.

As yet, the defendants have offered no justification for their refusal to consider or their refusal to place plaintiff in

Oklahoma.[1] I note that it may be that the state can offer persuasive and perhaps compelling justifications for keeping parolees in Wisconsin rather than permitting them to be paroled in another "receiving state." On the present record, however, I cannot determine whether any such justifications or other similar considerations are present.

Accordingly, on the basis of the entire record herein and for the reasons stated above, it is hereby ordered that defendants' motion to dismiss is denied as to plaintiff's claim that the defendants unconstitutionally refused to parole plaintiff to Oklahoma; and that defendants' motion to dismiss is granted as to all other allegations of the complaint.

---

1. Even if I were to conclude that the right to travel is a "category (b)" fundamental interest, I would deny the motion to dismiss. *Morales* indicates that under such circumstances, the court is to allocate the burden of persuasion to the defender of the correctional measure but that the nature of the burden is simply to show the existence of a rational relationship or reasonable necessity. *See Mabra, supra,* 356 F.Supp. at 628. The Court of Appeals stated: "a district court should scrutinize closely the justifications offered by the State for the limitation. Its review must 'be more than an obeisance to a warden's asserted expertise'." (citations omitted.) *Morales, supra,* slip opinion at 12.