**Frank PAULUS, Petitioner,**

v.

**C. E. FENTON, Warden, U. S. Pen., and J. J. Murray, Caseworker, U. S. Pen., Respondents.**

Civ. No. 76–1272.

United States District Court, M. D. Pennsylvania.

Jan. 27, 1977.

---

Peter T. Campana, Williamsport, Pa., Gerald J. Oratio, Westwood, N.J., for petitioner.

S. John Cottone, U. S. Atty., Scranton, Pa., for respondents.

## MEMORANDUM

NEALON, Chief Judge.

Petitioner was until recently confined at the United States Penitentiary in Lewisburg, Pennsylvania. He had filed this habeas corpus action under 28 U.S.C. § 2241 *pro se,* but has recently obtained counsel. Since petitioner's release from confinement, and while this action has been pending, he has been in a special and highly unusual form of custody, and is required to remain in this state pending the outcome of this action.[1] In this petition he argues that the failure of the respondents to formulate a plan other than one requiring him to take up residence in the State of Michigan justifies absolute release or parole under a plan formulated by the Court.[2] Because there are no disputes of material fact, an evidentiary hearing has not been conducted. *See* 28 U.S.C. § 2243. *Compare Yarnel v. Brier-*

---

1. On December 22, 1976, petitioner was released from confinement at Lewisburg and ordered to report to a federal parole officer in Detroit, Michigan. According to a motion for a temporary restraining order filed December 23, petitioner was required to accept this plan or serve a full term in federal custody. Petitioner's date of mandatory release is February 1978, minus extra good time. The government has agreed to permit petitioner to remain in Pennsylvania pending the outcome of this action, thereby mooting the motion for a TRO.

2. Petitioner also claims money damages for the period of time between his tentative date of parole and his actual date of release. Because of the disposition made in this case, I need not decide the scope of relief possible under § 2241.

*ley,* 324 F.Supp. 311 (W.D.Pa.1971), *aff'd,* 468 F.2d 816 (3d Cir. 1972), *cert. denied,* 410 U.S. 940, 93 S.Ct. 1405, 35 L.Ed.2d 607 (1973), *with United States ex rel. Jones v. Brierley,* 276 F.Supp. 567 (E.D.Pa.1967).

Petitioner's federal confinement was a consequence of a five-year regular adult sentence imposed February 10, 1975 in the District of New Jersey, and a concurrent three-year sentence imposed under 18 U.S.C. § 4208(a)(2) on May 12, 1975 in the Eastern District of Michigan. While serving these sentences at Lewisburg, a commitment detainer was filed by the State of Michigan. The commitment detainer represented a five to ten-year sentence imposed earlier in Michigan for which that state sought eventual custody.

On March 10, 1976, petitioner received federal parole to the actual physical custody of the Michigan detaining authorities. On that date, however, petitioner refused to waive extradition, and he was returned to Lewisburg.[3] New parole proceedings were conducted in June 1976, and petitioner was again granted parole effective August 3, 1976, to the actual custody of the detaining authorities, or effective October 5, 1976, if the detainer was withdrawn. On August 3, the Michigan authorities requested the return of the commitment detainer although the state sentence remains outstanding.[4] Consequently, petitioner became available for parole on October 5, subject to the "completion of a satisfactory plan for parole supervision."[5]

As indicated by the affidavit of respondent John J. Murray, a Correctional Treatment Specialist for the Bureau of Prisons, the attempts to find a parole plan acceptable to parole officials in several districts began in August. According to correspondence from petitioner after the Murray affidavit was prepared, these efforts continued at least through December 1976. Five applications had been prepared by Mr. Murray after suggestion by petitioner. These plans were rejected by the probation offices of each district for a variety of reasons: (1) District of New Jersey—could not locate person with whom petitioner hoped to reside; petitioner lacked "roots" in the district; (2) District of Connecticut—parole difficulties of person with whom petitioner hoped to reside; (3) Eastern District of Michigan—impractical because of outstanding state sentence; (4) Eastern District of New York—criminal history of person with whom petitioner hoped to reside; and (5) Southern District of New York—absence of employment plans. Apparently plans have been submitted to all districts petitioner has suggested. Petitioner has been forced to accept a second plan for parole to Michigan, where he faces an outstanding sentence and possible arrest. He remains in Pennsylvania awaiting the outcome in this action.

Petitioner contends that respondents[6] have been unwilling to assist petitioner in obtaining a parole plan for any district other than one in Michigan, and that this unwillingness is an attempt to maneuver petitioner's return to Michigan notwithstanding

---

**3.** No claims are raised with regard to the events of March 10. Apparently, the Parole Commission routinely requires parolees in Pennsylvania to waive their rights under 19 Purdon's Pa.Stat.Ann. § 191.1 *et seq.* (1964) in order that parole to the "actual physical custody of the detaining authorities," as opposed to the custody of local authorities, may be accomplished.

**4.** In *United States ex rel. Paulus v. Arnold,* Civil No. 76–821 (M.D.Pa., Aug. 16, 1976), petitioner was granted habeas corpus relief limited to any *in-prison* effect the detainer may have had while it remained outstanding. As was emphasized in subsequent orders, the validity of the detainer or the underlying Michigan sentence was unaffected by that relief. *See* Or-

ders of Sept. 30, Oct. 5, and Dec. 7, 1976 in Civil No. 76–821.

**5.** "When an effective date of parole has been set by the Commission, release on that date shall be conditioned upon continued good conduct by the prisoner and the completion of a satisfactory plan for parole supervision. . . . A parole grant may be retarded for up to one hundred and twenty days without a hearing for development and approval of release plans."

41 Fed.Reg. 37326 (Sept. 3, 1976) (§ 2.29(c)). The 120-day period will end in early February 1977.

**6.** The named respondents are the Warden at Lewisburg and the affiant, Mr. Murray.

the withdrawal of the detainer. Respondents argued in their answer that petitioner had not been paroled because of the absence of a parole plan, and further that the petition should be dismissed for failure to exhaust administrative remedies. Because the Court is unaware of any remedies available in petitioner's rather unusual circumstances, and because petitioner in his traverse contends that there are no remedies, I will consider the merits of the petition.

 Although parole is governed by due process, *see generally Soloway v. Weger,* 389 F.Supp. 409 (M.D.Pa.1974), petitioner probably has no right to a parole plan of his choice, in lieu of its acceptability to a district's probation office. Parole is, in many respects, a continuation of confinement. In deciding that parole status satisfied the requirement of "custody" for habeas corpus purposes, the Supreme Court noted parole constraints included dictation of the community of residence. *See Jones v. Cunningham,* 371 U.S. 236, 242, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). As a matter of constitutional requirements, petitioner would appear to have no more choice over his parole residence than he had in serving his federal time in the Federal Correctional Institution at Milan, Michigan where petitioner desired to go at the time of his sentencing, as opposed to serving at Lewisburg, where he was actually sent.[7] *See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montayne v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).[8] The applicable regulations grant to petitioner no right to determine parole residence, but at most impose upon federal officials an obligation of reasonable efforts to secure a plan acceptable to all parties concerned.

As provided in § 2.33 of the new regulations, a parolee "will be released to the place of . . . legal residence unless the Commission is satisfied that another place of residence will serve the public interest more effectively or will improve the probability of the applicant's readjustment." [9] Respondents believed that Michigan was petitioner's legal residence. Nevertheless, plans were submitted for four districts outside of that state. Petitioner contends that Florida is his place of legal residence, but does not contend that he ever suggested a plan for that state. Indeed, there is no allegation that there is *any* other state for which a plan with a realistic chance of probation office approval could be formulated. Clearly, respondents have made reasonable efforts in assisting petitioner to formulate a plan. Apparently, the only one approved is a plan requiring petitioner to report to Detroit, Michigan.

 The source of petitioner's difficulties is the outstanding state sentence of five to ten years. Petitioner alleges that he is in the process of attacking this sentence collaterally in Michigan courts. This he can in any event continue to do. However, petitioner should not be surprised if he is eventually required to serve time for criminal actions for which he has been duly convicted and sentenced. His choice now is, admittedly, an unpleasant one: serve out his federal sentence until mandatory release in February 1978, hoping that his collateral attack is successful and, if not, that no new detainer is filed against him and that Michigan does not seek at some future time to extradite him, or accepting parole in Michigan and possible arrest on the state charges. It is an unpleasant choice to be sure, but one necessitated by the fact that

---

7. Ironically, if petitioner had been sent to Milan, he would have had no rights of extradition and could have been paroled to the custody of Michigan state authorities without his consent.

8. Because of these cases, I have decided not to follow the line of analysis suggested in *McGregor v. Schmidt,* 358 F.Supp. 1131 (W.D.Wis. 1973). *McGregor* held that the right to travel protected a prisoner's application for parole and formulation of an approved plan. How-

ever, I find that a parolee's status is closer to that of the incarcerated prisoner than to that of a free citizen. Consequently, the Supreme Court cases limiting a prisoner's rights in an inter-prison transfer, govern the determination of the location to which a prisoner is paroled.

9. 41 Fed.Reg. 37326 (Sept. 3, 1976). This regulation, and the one cited in note 5 *supra,* became effective October 4, 1976, the day before petitioner's most recent date of parole.

petitioner has been unable to suggest, and respondents have been unable to formulate, any plan acceptable to a district probation office, other than the plan in Detroit. Since reasonable efforts have been made, unconditional release cannot be considered. However, nothing in this opinion forecloses renewed attempts at formulation of additional plans for districts other than those in Michigan, should petitioner elect to return to Lewisburg and to reject the Detroit plan.